OPINION
Appellant, Janet Nickels, appeals the judgment of the Portage County Court of Common Pleas, which granted permanent custody of her two children to the Portage County Department of Human Services ("DHS").
Appellant and Ladislav Lazar are the natural parents of two children, Michael Lazar, born September 15, 1983, and Jessica Lazar, born March 22, 1986. In April of 1997, appellant and Ladislav sought DHS's help to resolve Michael's behavioral problems. Because of Michael's problems and other family problems, including substance abuse and domestic violence, the juvenile court granted temporary custody of Michael and Jessica to DHS on June 19, 1997.
DHS then placed Jessica and Michael in separate foster homes and established case plans for appellant and Ladislav Lazar. On June 1, 1998, due to the parents' failure to comply with the case plan, DHS moved for permanent custody of Michael and Jessica. The motion for permanent custody was heard on August 7, 1998. On August 26, the juvenile court granted DHS's motion for permanent custody. From this judgment, appellant assigns the following error[1]:
 "The appellant, Janet Nickels, contends that the awarding of permanent custody of the appellant's minor children to the Portage County Department of Human Services was illegal, and against the manifest weight of the evidence, and was contrary to law."
In her sole assignment of error, appellant alleges that the juvenile court's decision to award permanent custody of Jessica and Michael to DHS was contrary to law and against the manifest weight of the evidence. Appellant contends that she was not afforded enough time to work on the case plan before DHS filed its motion for permanent custody. She further contends that granting permanent custody of Michael and Jessica to DHS was not in the children's best interest because they are older children, which decreases the likelihood that they will be adopted.
Pursuant to R.C. 2151.414(B), a juvenile court may terminate the rights of a natural parent and grant permanent custody to a public children services agency if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 "(2) The child is abandoned and the parents cannot be located;
 "(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody."
Clear and convincing evidence is more than a mere preponderance of the evidence; it produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." In the Matter of: Taylor (June 11, 1999), Ashtabula App. No. 97-A-0046, unreported. A judgment supported by some competent, credible evidence going to all the essential elements will not be reversed as against the manifest weight of the evidence. In re Hederson
(1986), 30 Ohio App.3d 187, 190, 507 N.E.2d 418.
In the instant case, the juvenile court determined that R.C.2151.414(B)(1) applied to Michael and Jessica Lazar in that the children were neither abandoned nor orphaned and could not be placed with either parent within a reasonable time or should not be placed with the parents. In making that determination, the juvenile court relied on R.C. 2151.414(E)(1) and (4). R.C.2151.414(E) provides, in part:
 "In determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[.]
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]"
The juvenile court specifically found that notwithstanding reasonable case planning and diligent efforts by DHS to assist appellant in remedying the problems that initially caused the children to be placed outside the home, appellant continuously and repeatedly failed to remedy those problems. The court further found that appellant demonstrated a lack of commitment toward her children by failing to regularly support, visit, or communicate with them. Upon review, we conclude that clear and convincing evidence supports the juvenile court's findings.
Appellant's case plan, filed with the juvenile court on June 16, 1997, set forth the following objectives: (1) seek a drug and alcohol assessment and follow the recommendations of that assessment; (2) seek a psychological evaluation; (3) attend a domestic violence support group; (4) attend the Safer Solutions Program; and (5) participate in the Bair Foundation in-home therapy program. Hope Nyitray, the DHS case worker, testified that she discussed the case plan with appellant when it was first implemented, and she referred appellant to Portage County Alcohol Drug Abuse Services for her psychological evaluation and alcohol/drug assessment. Ms. Nyitray indicated that as of the date of the hearing, over a year after the case plan was filed, appellant had not made any progress on her case plan. Appellant also testified that she had not completed any of the objectives of the case plan.
Appellant contends that DHS did not give her enough time to work the case plan before it filed a motion for permanent custody. Appellant claims that she did not comply with any of the case plan's objectives because she had difficulty attending so many counseling sessions due to her work schedule and her husband's medical condition. She maintains that due to financial hardship and loss of employment, she and her husband were forced to leave Portage County and seek employment and housing in Cuyahoga County. She argues that she was not afforded enough time to make the requisite changes in her living arrangements to accommodate the prescriptions of the case plan.
Although the current version of R.C. 2151.413 does not set forth how long a public children services agency must wait before filing a motion for permanent custody of a child who is in its temporary custody, former R.C. 2151.413(A), which was amended on September 18, 1996, required that a children services agency seeking permanent custody of a child must have had temporary custody for at least six months immediately preceding the filing of the motion for permanent custody. In Lorain Cty. ChildrenServ. v. Keene (1997), 118 Ohio App.3d 535, 693 N.E.2d 833, the Sixth Appellate District ruled that former R.C. 2151.413, requiring an agency to wait six months before moving for permanent custody, was intended to allow time for the case plan to work. If six months were deemed sufficient time for a case plan to work, we believe that more than one year provided appellant with sufficient time to work on the objectives of her case plan.
Even if we were to accept appellant's argument that she was not afforded enough time to work on the case plan, other clear and convincing evidence exists to support the juvenile court's finding that Jessica and Michael could not be placed with appellant within a reasonable time or should not be placed with her. As previously discussed, R.C. 2151.414(E) provides that a court may make a finding that the children cannot be placed with their parents within a reasonable time or should not be placed with them if any of the factors set forth in R.C. 2151.414(E)(1) through (12) exist as to the children's parents. In the instant case, the juvenile court also found that appellant had demonstrated a lack of commitment toward her children by failing to regularly support, visit, or communicate with them when able to do so.
Ms. Nyitray testified that the case plan authorized visitation on a bi-weekly basis from May of 1997 to the date of the hearing. As of the hearing date, appellant exercised her opportunity to visit her children four times out of a possible thirty-three. Ms. Nyitray indicated that appellant's last visit with her children was on July 30, 1997, and appellant had no other contact with her children from the time that they were taken into the temporary custody of DHS except a birthday card addressed to Jessica and delivered to DHS in March of 1998. Ms. Nyitray further testified that appellant had not paid any child support, and provided no food, gifts, or clothing for the children, since April of 1997. Appellant testified that the reason she did not visit her children was that she did not have a car, and the reason she did not call them was that she did not have a telephone. When asked why she did not write to her children, even though she had DHS's address, she stated that she was just trying to save money. Based on the testimony of Ms. Nyitray and appellant, we conclude that the juvenile court's findings were supported by clear and convincing evidence.
Having properly determined that Jessica and Michael could not be placed with appellant within a reasonable period of time or should not be placed with her, the juvenile court next determined whether granting permanent custody to DHS was in the children's best interest. R.C. 2151.414(D) provides:
 "In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
The juvenile court determined that it was in the best interest of Jessica and Michael to grant DHS's motion for permanent custody after considering the factors enumerated in R.C. 2151.414(D)(1) through (4). Applying those factors, the juvenile court specifically found that:
 "(1) The child, Jessica Lazar, is bonded with her mother, Janet Nickels and her father, Ladislav Lazar. Michael Lazar has great anger and hostility towards his mother and to a lesser degree towards his father. The children have not had significant interaction with any other relatives. The children are bonded to each other.
 "(2) The child, Jessica Lazar, has indicated a wish to return home. The child, Michael Lazar, wants to be adopted.
 "(3) The Court finds the children, Jessica and Michael Lazar, have been in the custody of their parents, Janet Nickels and Ladislav Lazar, until April 29, 1997 when they were placed in the Temporary Custody of the Portage County Department of Human Services in foster care. The children are currently in separate foster facilities but have visitation with one another.
 "(4) The Court finds that these children have a need for a legally secure permanent placement and that placement cannot be achieved without granting the Portage County Department of Human Services permanent custody. The Court finds that there are no relatives of the children willing or able to assume the custody of these children."
Clear and convincing evidence presented at the custody hearing supports the juvenile court's best interest determination.
Tim Evers, a therapist treating Michael, testified that Michael has been diagnosed with Attention Deficit Hyperactivity Disorder and major depression and has problems in school with his peers. He further testified that Michael was in a stable environment at his foster home, and it could be detrimental to Michael's mental health to be returned to his parents' home under the present conditions.
Dr. Debra Walsh, a psychologist seeing Jessica, testified that Jessica has been diagnosed with Adjustment Disorder with Anxiety, but she behaves well at her foster home. She testified that Jessica should not be reunited with her parents under the present circumstances and that it would be in Jessica's best interests to have permanent custody granted to DHS so that Jessica could establish a family relationship with others.
Thomas Loepp, the guardian ad litem for the children, recommended that appellant's parental rights be terminated. Mr. Loepp indicated that closure is essential for the children so that they can assimilate with their respective foster families. Furthermore, appellant's appearance at the hearing revealed that she is unable to provide a proper home for her children. She and her husband came to the hearing nearly two hours late and both smelled of alcohol.
Appellant contends that granting permanent custody of Michael and Jessica to DHS was not in the children's best interest because they are older children, which decreases the likelihood that they will be adopted. Although former R.C. 2151.414(D) listed the reasonable probability of the child being adopted as a factor to be considered by a juvenile court in its best interest analysis, adoptability is no longer a factor in the current version of the statute; therefore, whether or not Michael and Jessica will be adopted need not be considered in deciding whether clear and convincing evidence existed to support the juvenile court's determination that granting permanent custody to DHS was in the children's best interest. Based on the testimony presented at the hearing, we conclude that the juvenile court's finding that it was in the children's best interest to terminate appellant's parental rights was supported by clear and convincing evidence.
We conclude that there was clear and convincing evidence to support the findings entered by the juvenile court, to wit: that Michael and Jessica cannot be placed with appellant within a reasonable time or should not be placed with her and that granting permanent custody to DHS was in the children's best interest. The juvenile court's judgment was not against the manifest weight of the evidence or contrary to law.
For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.
 _______________________ JUDGE ROBERT A. NADER
FORD, P.J., O'NEILL, J., concur.
[1] We note that Ladislav Lazar is not a party to this appeal. Although the juvenile court's decision divested him of all parental rights, Lazar did not appeal from the judgment below.